IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANNY E. ROGERS #147104, | ) ) ) |
| Plaintiff, | ) No. 3:23-cv-00471 ) |
| v. | ) Judge Trauger ) Magistrate Judge Newbern |
| MICHAEL KEYS, *et al.*, | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Danny E. Rogers, an inmate of the West Tennessee State Penitentiary in Henning, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against six defendants, alleging violations of Plaintiff's civil rights while he was incarcerated at the Riverbend Maximum Security Institution in Nashville, Tennessee. (Doc. No. 1).

The complaint is before the court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.      PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

1

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520121 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.  Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III.  Facts Alleged by the Plaintiff

On March 17, 2022, at the Riverbend Maximum Security Institution where the plaintiff was incarcerated at that time, Defendant Corrections Officer Gary l/n/u ("Officer Gary") "claimed he had noticed several wall socket covers were missing from the educational school/program building walls" and he "want[ed] them to be returned back to him." (Doc. No. 1 at 12-13). Officer Gary made this statement to the plaintiff and "a few other black inmates during the students

2

standing in a group to together while ready to exit the educational building." (*Id.*) Officer Gary did not make this statement to the white inmates who were present at the same location at the same time. Officer Gary later "said he was sorry for not also including the white inmate group into the conversation/speech that he gave to only the black inmates standing in the group in front of him." (*Id*. at 21).

On March 30, 2022, the plaintiff filed a Title VI grievance regarding the outlet-cover incident, alleging that he was the victim of racial discrimination. The plaintiff's grievance was returned to him as unprocessed. Defendant Keys, Associate Warden of Treatment, refused to accept the plaintiff's grievance unless he retitled it because, as defendant Corporal Ward told the plaintiff, "this incident could cause RMSI to lose the federal funded school grant money over something so minor." (*Id*. at 9).

Ultimately, it was determined that a white inmate named Cross had taken the outlet covers. When Cross's cell was searched, alcohol was discovered as well. Defendant Stokes asked Defendant Davis to do her a favor and "lock the white inmate down in his cell for a few days" rather than issuing him a disciplinary incident report. (*Id*. at 17). Cross was never issued a disciplinary report.

The plaintiff complained to Officer Gary about his failure to issue the disciplinary report and questioned his motives. Officer Gary said he "thought he had done enough to inmate Cross because [he] had chewed Cross['s] butt out in the unit #4 laundry room for making him look bad." (*Id*. at 27). Afterwards, Officer Gary claimed to smell alcohol coming from the cell next to the plaintiff's cell. Officers first searched the inmate's cell located next to the plaintiff's cell, where officers discovered alcohol. Officers then searched the plaintiff's cell, and no alcohol was found.

The plaintiff believes he was targeted by Officer Gary for the search because he (the plaintiff) had reported racial discrimination.

IV. **Analysis**

The complaint alleges three claims under Section 1983 against six defendants, all employees of the Riverbend Maximum Security Institution: Michael Keys, Associate Warden of Treatment; S. Ward, Corporal; f/n/u Doe, Alternative Grievance Board Chairperson; Linda Stokes, Sergeant; f/n/u Davis, Unit 14 Manager; and Gary l/n/u, Corrections Officer. All defendants are sued in their individual and official capacities.

A. **Grievance-related claims**

The plaintiff's first claim is premised on how certain defendants responded to, or failed to respond to, the plaintiff's grievances. However, prisoners do not have a constitutionally protected liberty interest in an inmate grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002) ("A grievance appeal does not implicate the First Amendment right of access to the courts because there is no inherent constitutional right to an effective prison grievance procedure"); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a Section 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"). Further, if the prison provides a grievance process, violations of its procedures or its ineffectiveness do not rise to the level of a federal constitutional right. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have ... found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (stating that "there is no inherent constitutional right to an effective prison grievance procedure"). Thus,

the plaintiff's grievance-based claims against all defendants must be dismissed. *See Johnson v. Bouldin*, No. 3:22-CV-011-RLJ-DCP, 2022 WL 969035, at *5 (E.D. Tenn. Mar. 30, 2022) (finding that plaintiff's allegation that defendant interfered with his Title VI grievance fails to allege a constitutional violation "as he did not have a constitutional right to an effective grievance procedure").

### B. Equal protection claims

The plaintiff's second claim is that defendants Stokes and Gary treated Black inmates differently, and less favorably, than white inmates. Specifically, the complaint alleges that Officer Gary accused the plaintiff and other Black inmates (but not white inmates) of theft and failed to punish a white inmate for a disciplinary infraction at the request of Officer Stokes. The complaint alleges that these actions violated the plaintiff's right to "equal protection." (Doc. No. 1 at 24).

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Clause embodies the principle that all persons similarly situated should be treated alike." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "[T]o establish an equal protection violation, a plaintiff must establish more than differential treatment alone – a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)).

Here, the plaintiff's speculation as to defendants Gary and Stokes's motives is insufficient to show a discriminatory intent or purpose, particularly considering that the complaint alleges that, when the plaintiff brought his concerns to Officer Gary's attention, Officer Gary apologized for speaking only to the Black inmates about the missing outlet covers. *See Nail v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) ("The fact that 'defendants are caucasian' and that Nali 'is non-

caucasian' does not by itself show that defendants were motivated to discriminate against him on the basis of his race or ethnicity."); *Ashely v. Genovese*, No. 20-1275-JDT-cgc, 2021 WL 4255632, at *3 (W.D. Tenn. Sept. 17, 2021) (finding that prisoner failed to state an equal protection claim under Section 1983 where he had not "offered facts plausibly suggesting that Shipley was motivated to treat him differently during the incident because of Plaintiff's status as an African American). Further, the complaint alleges that Officer Gary stated that he declined to issue a disciplinary report against Cross not because of his race but because Officer Gary "thought he had done enough to inmate Cross because [he] had chewed Cross['s] butt out in the unit #4 laundry room for making him look bad." (Doc. No. 1 at 20). And even then, that Cross was not reported for his infraction does not show discrimination against the plaintiff because the complaint fails to allege that Cross was similarly situated to the plaintiff; indeed, the complaint alleges that the plaintiff was not disciplined because, unlike Cross, no alcohol was found in the plaintiff's cell during a search. It is unclear whether the plaintiff was punished at all. *See Coker v. Summit Cnty. Sheriff's Dep't*, 90 F. App'x 782, 790 (6th Cir. 2003).

In summary, the plaintiff's allegations are insufficient to state an equal protection claim against Officer Gary or Stokes, and no other defendant is mentioned in the section of the complaint addressing the plaintiff's equal protection claim. This claim will be dismissed as to all named defendants.

### C.  Retaliation claims

The plaintiff's third claim is that (1) defendants Keys, Ward, and Doe retaliated against the plaintiff for voicing his concerns about race-based treatment of inmates "by refusing to allow Plaintiff Roger['s] Title VI grievance to be processed and heard according to TDOC policy" (Doc. No. 1 at 24) and (2) defendant Gary retaliated against the plaintiff for questioning Gary's motives

in not issuing a disciplinary report against a white inmate by searching the plaintiff's cell in hopes of finding contraband (*id*. at 27).

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To state a First Amendment retaliation claim, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d 378, 394).

The grievances that form the basis of this claim are not attached to the complaint. However, the plaintiff attached defendant Ward's May 12, 2022 response to the plaintiff's inquiry about his grievances submitted on March 28, March 29, and March 30, 2022. (*See* Doc. No. 1, Attach. 1 at 9). These dates match one of the dates provided by the plaintiff in his complaint regarding the first Title VI grievance he filed. (*See* Doc. No. 1 at 8) (referencing March 30, 2022 inmate grievance about "Plaintiff Rogers . . . being discriminated against."). The complaint leaves no question that the subject of the plaintiff's at-issue grievances was the plaintiff's belief that Black inmates were being treated differently, and not as favorably, as white inmates. *Cf. Hill*, 630 F.3d at 472 (noting that the court was unable to determine whether grievances were frivolous because it had "no details about those grievances beyond [the inmate's] allegations"). This belief is what led the plaintiff to pursue equal protection claims in this lawsuit.

"An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). "If the grievances are frivolous, however, this right is not protected." *Hill*, 630 F.3d 468, 472. Although

the court has determined that the plaintiff's equal protection claims fail to state Section 1983 claims upon which relief can be granted against the named defendants, the court did not find that the plaintiff pursued these claims frivolously or maliciously. For purposes of the required PLRA screening, the court finds that the plaintiff's retaliation claims against Keys, Ward, and Doe in their individual capacities should proceed for further development.

Moving to the plaintiff's claims against defendant Gary, the complaint alleges that Officer Gary searched the plaintiff's cell looking for contraband because he (the plaintiff) was attempting to report racial discrimination. As noted above, filing grievances through an inmate grievance process is protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). And a cell search is sufficient to establish adverse action. *See Bell v. Johnson*, 308 F.3d 594, 606-07 (6th Cir. 2002) (finding that defendant's search of plaintiff's cell and confiscation of his legal papers and medical snacks was sufficient to establish adverse action; these alleged retaliatory acts "were not merely de minimis acts of harassment"). The court finds that the complaint supports a colorable claim of retaliation against Officer Gary in his individual capacity. Of course, the plaintiff ultimately will be required to provide evidence in support of his allegations, including that Officer Gary's search of the plaintiff's cell was motivated at least in part by the plaintiff's attempt to file grievances.

The complaint also names Keys, Ward, Doe, and Gary as defendants in their official capacities. According to the complaint, these defendants were, at all times relevant to the complaint, employees of the Riverbend Maximum Security Institution which is operated by the Tennessee Department of Correction ("TDOC"). (Doc. No. 1 at 6). "Official-capacity suits ... 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't*

*of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, the plaintiff's official-capacity claims against Keys, Ward, Doe, and Gary are actually suits against their employer, TDOC.

"TDOC is an arm of the state of Tennessee for purposes of Eleventh Amendment immunity." *Primm v. Tenn. Dep't of Corr.*, No. 3:15-cv-00230, 2017 WL 1210066, at *5 (M.D. Tenn. Mar. 31, 2017) (citing *Owens v. O'Toole*, No. 3:14-cv-02040, 2014 WL 5846733, at *3 (M.D. Tenn. Nov. 12, 2014)). Sovereign immunity therefore applies. *See, e.g., Carter v. Bell*, No. 3:10-0058, 2010 WL 3491160, at *4 (M.D. Tenn. Sept. 1, 2010) (holding that RSMI Warden, "as an employee of [TDOC], represents the State of Tennessee"); *Arauz v. Bell*, No. 3:06-0901, 2007 WL 2457474, at *2 (M.D. Tenn. Aug. 24, 2007) (adopting report and recommendation finding that RSMI employees are "employees of [TDOC]"). Tennessee's sovereign immunity protects TDOC from official capacity claims for money damages. *Jones v. Mays*, No. 3:19-cv-00795, 2020 WL 5106760, at *5 (M.D. Tenn. Aug. 31, 2020). Here, the complaint seeks compensatory damages against TDOC. (Doc. No. 1 at 24). These damages are not available due to TDOC's sovereign immunity.

There are only three exceptions to the general rule of sovereign immunity: (1) where a state has waived its immunity and has consented to be sued in federal court, *see Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)); (2) where Congress validly abrogates sovereign immunity through its enforcement powers pursuant to the Fourteenth Amendment to the United States Constitution, *see Seminole Tribe of Florida*, 517 U.S. at 57-73; *Quern v. Jordan*, 440 U.S. 332, 340) (1979) (collecting cases)); and (3) where a plaintiff sues state officials in their official capacities seeking only prospective injunctive relief for a continuing violation of federal law, *see Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 269 (1997); *Mich. Corr. Org. v. Mich.*

9

*Dep't of Corr*., 774 F.3d 895, 904 (6th Cir. 2014). The first two exceptions do not apply: Congress has not abrogated Eleventh Amendment immunity under Section 1983, and Tennessee has not waived it or consented to suit under Section 1983. *Primm*, 2017 WL 1210066, at *5 (citing *Owens*, 2014 WL 5846733, at *3); *Burrell v. Tenn. Dep't of Human Servs*., No. 94-5754, 1995 WL 314891, *2 (6th Cir. May 23, 1993) (per curiam); *Heithcock v. Tenn. Dep't of Children's Servs*., No. 3:14-cv-2377, 2015 WL 4879107, at *6 (M.D. Tenn. Aug. 14, 2015)).

The plaintiff seeks prospective injunctive relief of the nature that may implicate *Ex Parte Young*. (*See* Doc. No. 1 at 25) (seeking the issuance of "declaratory relief declaring that the acts and omissions of the defendants have violated Plaintiff's rights and stating the duties with respect to those rights."). "[D]emands for injunctive relief are properly brought against a TDOC official in his official capacity." *Hall v. Trump*, No. 3:19-cv-00628, 2020 WL 1061885, at *2 (M.D. Tenn. Mar. 5, 2020) (citing *Will*, 491 U.S. at 71 n.10). The court thus considers whether the plaintiff has properly stated such a claim here against a TDOC official.

Under Section 1983, the state of Tennessee cannot be held liable for injunctive relief under a theory of respondeat superior or vicarious liability. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, a plaintiff must allege that he or she suffered a constitutional violation and a policy or custom of TDOC or the state of Tennessee directly caused the violation. *Hadrick v. City of Detroit, Mich*., 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell*, 436 U.S. 658, 690-92). In other words, "[a] plaintiff seeking to impose liability under [Section] 1983 must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged," such that there is a "direct causal link between the municipal action and the deprivation of federal rights." *Phillips v. Shelton*, No. 2:18-cv-00077, 2019 WL 429679, at *4 (M.D. Tenn. Feb. 4, 2019) (citing *Burns v. Robertson Cnty*., 192 F. Supp. 3d 909, 920 (M.D. Tenn. 2016) and *Bd. of Cnty. Comm'rs*

*v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Here, the complaint fails to allege an illegal policy or custom. There are simply no allegations in the complaint supporting the imposition of liability on TDOC. Thus, the plaintiff's claims against Ward, Doe, Keys, and Gary in their official capacities, which is a claim against TDOC, will be dismissed.

## V. Conclusion

The court has screened the complaint pursuant to the PLRA and determined that the complaint fails to state Section 1983 claims upon which relief can be granted against all defendants except for the plaintiff's retaliation claims against Keys, Ward, Doe, and Gary in their individual capacities. Those claims will proceed, but all other claims and defendants will be dismissed.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge